UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ETHAN DAVIS,

    Plaintiff,                                   CIVIL ACTION NO. 13-13319

  v.                                     DISTRICT JUDGE GERALD E. ROSEN
                                       MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as there is substantial evidence on the record that claimant retained the residual functional capacity for a limited range of light work.

**II.   REPORT**

    **A.    Introduction and Procedural History**

Plaintiff filed an application for Social Security Supplemental Security Income benefits on April 5, 2011, alleging that he had become disabled and unable to work on October 15, 2010 , at age 22, due to residual chest, side and right arm pain stemming from a 2006 chest stabbing.  Claimant also alleged disability as a result of depression, poor

impulse control and a severe cognitive disorder. Benefits were initially denied by the Social Security Administration. A requested de novo hearing was held on January 23, 2012, before Administrative Law Judge (ALJ) Patricia McKay. The ALJ found that the claimant retained the residual functional capacity to perform a limited range of light work where he was able to work at his own pace without being closely supervised. The ALJ determined that claimant was only capable of performing simple, routing tasks involving no more than two steps to complete. He could have only occasional contact with co-workers and the general public. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment, and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 22 years old at the time of the administrative hearing (TR 40). He had an eleventh grade education where he had received special education services (TR 43). Claimant had no past relevant work experience (TR 26). Plaintiff explained that he attended special education services because he was a "slow learner". As a result, claimant stated that he had difficulties reading, writing and doing math (TR 45-47)

Plaintiff testified that he attempted to seek employment through a temporary employment service, but was unable to find work due to a fear of being out in public (TR 48-50). Claimant depended on public transportation, but asserted that he would never ride the bus alone (TR 51). Plaintiff alleged disability as a result of residual pain and breathing difficulties stemming from a 2006 incident where he was stabbed in the chest by his mother's

boyfriend (TR 54-55). Ever since the stabbing, the claimant alleged that he did not like being around a lot of people. He also had trouble sleeping. (TR 60-61).

In an Adult Function Report completed in October 2010, Plaintiff indicated that he lived with family and had no difficulty caring for his personal needs (TR 139-140). A family member prepared his meals, but claimant did some ironing and his own laundry. He was unable to mow the lawn due to breathing problems and grass allergies (TR 141). Plaintiff went outside at least twice a day, and could walk, ride in a car, and use public transportation (TR 142). He planned to learn to drive (TR 142). He was able to shop for food and clothing twice a month, usually with a friend or relative, and could pay bills and count change (TR 142). Claimant's hobbies included watching television, playing card and board games twice a week, and occasionally writing songs (TR 143). He spent time with friends whenever possible, and reported no issues getting along with others (TR 143). Plaintiff could finish tasks that he started, and was able to follow instructions with help (TR 144). He got along with authority figures, but did not handle stress well (TR 145).

A Vocational Expert, Pauline Pegram, testified that there were no jobs for claimant to perform if his testimony were fully accepted[1] (TR 71). If he were capable of light work, however, there were numerous unskilled house and office cleaning, packaging, assembly, inspection and sorting jobs that he could perform with minimal vocational adjustment (TR 67). These simple, routine jobs required performing no more than two step tasks.

---

[1] The witness opined that, if claimant was unable to do any reaching with his dominant right arm due to severe pain, all work activity would be precluded (TR 71).

Workers could control their own pace, and there would only be occasional contact with co-workers and the general public. There would be no need for close supervision (TR 66).

### B.  ALJ's Findings

The Administrative Law Judge found that Plaintiff was impaired as result of a history of chest stabbing and lung puncture causing chronic chest, side and right arm pain. The ALJ further determined that the claimant suffered from poor impulse control, depression and a cognitive disorder, but that he did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's multiple problems restricted him to simple, repetitive jobs involving one to two steps to complete. He had to control his own pace of work, and could have only occasional contact with supervisors, co-workers and the general public. Nevertheless, the ALJ found that the claimant retained the residual functional capacity to perform a significant number of light jobs, as identified by the Vocational Expert (TR 20-27).

### C.  Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court

does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

In the instant case, Plaintiff maintains that the ALJ erred at step three of the sequential evaluation by failing to find that he met Section 12.05(c) of the Listings of Impairments, which covers cognitive disorders such as mental retardation. Claimant asserts that his cognitive disorder and retardation has prevented him from working. The law is clear, however, that the mere existence of an impairment, even a severe one, will not entitle the claimant to disability benefits unless the impairment prevents him from returning to his previous work or any other substantial, gainful activity existing in the national economy, considering his age, education and work experience. 42 U.S.C. § 423(d)(2)(A), 20 C.F.R. § 416.1505 (2014).

**D.     Discussion and Analysis**

    **1.     Listed Impairments**

Once it has been determined that a claimant is not currently engaged in substantial, gainful activity and his impairment is indeed severe, the third stage in the evaluation process mandates a consideration of whether the relevant criteria in the Listing of Impairments (Appendix 1) have been met. The Listing of Impairments describes, for each of the major body systems, medical illnesses which are considered severe enough to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a) (2014). The regulations provide that when a claimant can prove that he suffers from an impairment that meets the duration requirement (12 months) and is listed in Appendix 1, the Commissioner must automatically find the claimant disabled, and should not go on to consider the claimant's age, education and work experience. 20 C.F.R. § 404. 1520(d) (2014). A claimant will not be found disabled under a listing, however, if there is a failure to satisfy any one of the criteria established for a particular impairment. King v. Heckler, 742 F.2d 968, 974 (6th Cir. 1984), 20 C.F.R. §404.1525(d).

Claimant does not challenge the ALJ's finding that he remains physically capable of performing substantial gainful activity. He only argues that the ALJ erred in finding that his cognitive disorder did not meet section 12.05(c) of the Listing of Impairments. Section 12.05, in relevant part, requires:

> *Mental Retardation:* Mental retardation refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e. the evidence demonstrates or supports onset of the impairment before age 22 [with]...
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
>    20 C.F.R. Pt 404, Subpt. P, App 1, § 12.05.

### 2.   Whether Plaintiff meets Listing 12.05(c)

After review of the record, I suggest that Plaintiff has not met his burden of showing that he met Listing 12.05(c) because there was insufficient evidence that his condition was at listing-level severity prior to age 22[2] (TR 22). As the ALJ accurately recounted, the only special education record submitted indicated that Plaintiff received special education for an emotional (rather than cognitive) impairment (TR 22, 269). Furthermore, medical records from claimant's treating psychiatrists at Team Mental Health Services revealed that the claimant was completely asymptomatic, was doing well with medication, and had completely normal mental status examinations prior to age 22 (TR 23-24, 251, 253, 257, 330, 342, 348, 352).

Plaintiff also failed to establish that he had the "deficits in adaptive function" necessary to meet the diagnostic definition of Listing 12.05(c). Adaptive functioning

---

[2]Contrary to Plaintiff's assertion, the ALJ did not simply reject his IQ scores because they were obtained after his 22nd birthday (See Plaintiff's Motion in Support of Summary Judgment at pp. 20-21). Instead, the ALJ found that there was "insufficient evidence demonstrating an onset prior to age 22," i.e. that Plaintiff did not exhibit the requisite deficits in adaptive functioning required by Listing 12.05's definitional requirement.

describes "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, socio-cultural background and community setting." *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 42 (4th ed. 2000) ("DSM-IV-TR").

The ALJ noted that the claimant had just mild restriction in activities of daily living. He had only moderate difficulties in social functioning, and in maintaining concentration, persistence or pace (TR 21). The ALJ recounted that Plaintiff was capable of handling all self-care requirements, and was limited by physical rather than mental abilities in performing household chores. Plaintiff was reportedly well-groomed at therapy sessions, lived with his father, had a girlfriend, and utilized public transportation if he could find someone to accompany him. He was also able to regularly watch television use the computer to socially interact with friends and family (TR 21, 40, 47-48, 51, 139-143, 221-258).

Claimant's activities do not reflect an inability to cope with the challenges of ordinary everyday life one would expect from an individual with mental retardation. Contrary to Plaintiff's assertion, I therefore suggest that Plaintiff does not satisfy the requirements of Listing 12.05.

Claimant next contends that the ALJ erred by neglecting to identify and properly explain the weight she assigned to the medical source opinion of Dr. Nick Boneff, a state agency consultative examiner. While the ALJ did not explicitly assign a weight to Dr. Boneff's opinion, it is evident that the ALJ gave substantial credit to the doctor's assessments

in her residual functional capacity evaluation. Dr. Boneff concluded that the claimant had no restriction in his ability to understand, remember, carry out, and make judgments on simple instructions and simple work-related decisions (TR 285). The ALJ explicitly acknowledged those findings in her decision, and directly accommodated them by limiting Plaintiff to simple, routine, repetitive work involving only one-and two-step tasks where Plaintiff retained control over pace (TR 22, 24). Similarly, the ALJ cited Dr. Boneff's conclusion that Plaintiff had marked limitations in his ability to interact with others (TR 24-25, 286), and accommodated those limitations by restricting him to only occasional contact with supervisors, co-workers and the general public (TR 22).

Any error stemming from the ALJ's failure to specifically set forth the exact weight she gave to Dr. Boneff's opinion is harmless, since it is apparent the doctor's conclusions were significantly credited[3]. As the Sixth Circuit has acknowledged, it is irrelevant that the ALJ "did not give weight to [a] physician's opinion" where the ALJ nevertheless "makes findings consistent with the opinion." Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 547 (6th Cir. 2004). Because the ALJ's RFC findings were consistent with Dr. Boneff's opinion, her failure to articulate a specific weight assigned to that opinion is irrelevant.

It is the rare case, indeed the exception, in which every piece of evidence points incontrovertibly towards a decision to deny benefits. There was evidence in the record which,

---

[3]While the Sixth Circuit routinely reviews decisions from administrative agencies for harmless error, the Court will not remand for further proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights. Rabbers v. Comm'r of Soc. Sec., 582 F.3d 647, 654 (6th Cir. 2009). Under the harmless error standard, the party seeking to have the judgment set aside bears the burden of showing that prejudice resulted from an erroneous ruling. Shinseki v. Sanders, 556 U.S. 396, 407-411 (2009).

9

taken in isolation, might suggest that the Plaintiff was totally disabled and that his testimony was fully credible . However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly.  Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978).  See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

      Since Plaintiff did not have any past relevant work, Plaintiff effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform jobs existing in the economy, notwithstanding his various impairments. The Commissioner, however, met her burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with his significant impairments. The Vocational Expert testified that there were numerous unskilled house and office cleaning, packaging, assembly, inspection and sorting jobs that he could perform with minimal vocational adjustment (TR 67). These simple, routine jobs required performing no more than two step tasks.  Workers could control their own pace, and there would only be occasional contact with co-workers and the general public. There would be no need for close supervision (TR 66).   Given the objective clinical findings of the examining physicians of record, there is substantial evidence on the record that Plaintiff retained the residual functional capacity for a restricted range of light work activity.

10

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

    s/ Charles E. Binder
    CHARLES E. BINDER
Dated: December 15, 2014    United States Magistrate Judge